**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: JOSEPH S. BEALE, | ) | Chapter 7 |
| | ) | Case No. 04 B 8748 |
| Debtor, | ) | |
| _____ | ) | Hon. Bruce W. Black |
| | ) | |
| ANDREW J. MAXWELL, Trustee | ) | Adversary No. 04 A 2416 |
| | ) | |
| Plaintiff, | ) | |
| | ) | District Court |
| v. | ) | Case No. 07 C 1796 |
| | ) | |
| JOSEPH S. BEALE et al. | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Gregory Kemp ("Kemp"), Jon Miho ("Miho"), Airport Trade Center, LLC, JPPM Investments, LLC, Nimitz-Paiea, Inc. ("NPI"), Paiea Holdings, Inc., Paiea Properties and TGK Investments, LLC (collectively "Paiea Defendants") filed a motion for leave to appeal an interlocutory order entered by Judge Bruce W. Black of the United States Bankruptcy Court for the Northern District of Illinois. For the reasons stated below, the motion is denied.

### I. BACKGROUND

On March 5, 2004, various creditors filed a Chapter 7 petition against Joseph S. Beale ("Beale" or "Debtor"). The Bankruptcy Court entered an Order for Relief adjudicating Beale a Chapter 7 debtor on April 5, 2004. The Bankruptcy Court appointed Andrew J. Maxwell ("Trustee") as trustee for the Debtor's bankruptcy estate. In part, the Trustee's theory is that, shortly before his personal bankruptcy was adjudicated, Beale spearheaded a complex series of

1

business transactions designed to shield his personal assets. Two primary events that took place four months before Beale's personal bankruptcy lie at the heart of the claims at issue here: the transfer of ownership of property and the removal of Beale as a corporate officer.

First, in November 2003, Paiea Properties, a Hawaii limited partnership, sold two pieces of property ("Property") to a group of companies for $12.2 million in promissory notes.[1] Paiea Properties was owned by NPI and PLP Holdings, Inc. ("PLP"), two Hawaii corporations. Beale was a shareholder in both NPI and PLP, owning a 45% share of each. The remaining 55% of both companies was held by Kemp (45%) and Miho (10%). Thus, Beale owned 45% of the corporations that owned the partnership that received over $12 million for the Property. Second, around the same time as the sale, NPI directors removed Beale as President and appointed Kemp.

The Trustee alleges that as a result of these two events, Beale "transferred some $5.49 million in value to his family members and business associates . . . and emerged with a net debt of nearly $1 million." Trustee's Answer in Opp'n to the Paiea Entities' Mot. for Leave to Appeal at 3. Essentially, the Trustee alleges that the sole purpose of the events at issue was to divert assets from Beale's control so that they could not be reached by his creditors and that this constitutes a fraudulent transfer from the bankruptcy estate. On October 31, 2006, the Trustee filed an amendment to the third amended complaint. The amendment included Counts 64 to 70[2]

---

[1] The Trustee contends that the sale was a "not a true sale of real estate, but a complex, concerted restructuring by the debtor and the Paiea Defendants of their ownership of the property, designed by them specifically to hinder, delay and defraud the debtor's creditors and place the property in question and all decision-making authority related to it in Kemp and entities affiliated with him, and well out of the reach of creditors." Trustee's Answer in Opp'n to the Paiea Entities' Mot. for Leave to Appeal at 3 n.2.

[2] Count 66 was subsequently dismissed by agreement of the parties. Count 70, breach of fiduciary duty, is not at issue in this motion.

against the Paiea Defendants, which were "based on: (a) their role in effecting the fraudulent transfer of the Debtor's interest in and control of the . . . Property; and (b) their oppression of the Estate's interest in the entity that owns the . . . Property through mismanagement and misconduct in operating same." Amendment to the 3d Am. Adversary Compl. ¶ 9.

The Paiea Defendants filed a motion to dismiss the amendment to the third amended complaint pursuant to Rule 12(b)(6).[3] They argued that "the overriding issue in this case . . . is whether the Trustee's fraudulent transfer claims fail as a matter of law in the absence of allegations that Beale transferred assets that he owned." Mem. in Supp. of Mot. to Dismiss at 1. They argued that a shareholder is not the owner of a corporation's assets and because Beale was simply a shareholder of NPI and PLP, the Property was not his to transfer. In response, the Trustee argued that the substance, not the form, of the transfer is controlling, Trustee's Response § II(A), and that the unrecovered transfer of all of the Debtor's rights of control is itself actionable as a fraudulent transfer, *id.* § II(B). On March 14, 2007, the Bankruptcy Court heard oral argument and subsequently denied the motion to dismiss, stating that the court agreed with the Trustee's position.

## II. DISCUSSION

The Paiea Defendants seek leave to appeal two questions of law that "address the scope of a debtor's assets under [the Uniform Fraudulent Transfer Act ('UFTA')]" and were, according to the Paiea Defendants, incorrectly decided by the Bankruptcy Court when it denied their motion to dismiss. Paiea Entities' Mem. of Law in Supp. of Their Mot. for Leave to Appeal at 6.

---

[3] Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 7012. Fed. R. Bankr. P. 7012(b).

A.     Legal Standard

A bankruptcy court's denial of a motion to dismiss is an interlocutory order. The defendants may appeal an interlocutory order only with leave of the district court. *See* 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of [Title 28]."). The manner in which the district court is to exercise its discretion implicates the same criteria as would an interlocutory appeal from a district court order. *See In re Jartran, Inc.*, 886 F.2d 859, 865-66 (7th Cir. 1989) (finding that a district court's jurisdiction does not require that the bankruptcy court certify the appeal).

Because of the "well-established judicial policy of . . . avoiding the delay and disruption which results from such piecemeal litigation," leave to appeal an interlocutory order will not be granted "absent exceptional circumstances." *In re Pullman Constr. Indust., Inc.*, 143 B.R. 497, 498 (N.D. Ill. 1992). In keeping with this policy, an appeal is allowed only when it presents: (1) a question of law; (2) that is controlling; (3) and contestable; and (4) the resolution of which will speed up the litigation. 28 U.S.C. § 1292(b); *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Further, the only questions of law that are suitable for interlocutory appeal are those that are "pure" and "abstract." *See Ahrenholz*, 219 F.3d at 677 (discussing an appropriate interlocutory appeal issue as held in *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000), namely "whether federal law preempts state business-tort law in suits between air carriers over routes and rates of service"). Thus, the court may grant leave to appeal only if the Paiea Defendants' motion satisfies these requirements.

4

B.  Argument

In support of their motion for leave to appeal, the Paiea Defendants identify two controlling questions of law that they argue the Bankruptcy Court incorrectly decided: "(1) whether a corporation's transfer of corporate assets constitutes a transfer of its shareholders' assets; and (2) whether an officer's position as president constitutes a property right of the officer that can be transferred." Paiea Entities' Mem. of Law in Supp. of Their Mot. for Leave to Appeal at 2.  The Paiea Defendants further argue that these issues are controlling and would speed litigation because if they prevail on appeal, then five of the six claims in the complaint would be dismissed as would six of the eight defendants.  Finally, they argue that the issues are contestable because the Seventh Circuit has yet to opine on whether to apply, in bankruptcy cases involving fraudulent transfers, principles of corporate law that provide that a corporation's assets belong to the corporation, not its shareholders, and that an officer's position is not a property right capable of being transferred.

The Paiea Defendants filed this motion for leave to appeal following the Bankruptcy Court's denial of a motion to dismiss.  Interlocutory orders such as a denial of a motion to dismiss are not routinely appealable.  *See Ahrenholz*, 219 F.3d at 676 (observing that "[a] denial of summary judgment is a paradigmatic example of an interlocutory order that normally is not appealable"); *Gierum v. Kontrick*, 01 C 4370, 2002 WL 226857, *3 (N.D. Ill. Feb. 14, 2002) ("In both [appeals from denials of summary judgment and motions to dismiss], a reviewing court is generally not faced with an issue concerning the 'meaning of a statutory or constitutional provision, regulation, or common law constitutional provision.'" (quoting *Ahrenholz*, 219 F.3d at 677)).  The Trustee urges the court to deny leave to appeal the denial of the Paiea Defendants'

5

motion to dismiss because the requirements of § 1292(b) cannot be met. The Paiea Defendants attempt to differentiate the issues involved from those in most motions to dismiss by framing the issues for appeal very narrowly so that, at first glance, they appear to be classic abstract issues of law as required by § 1292(b). However, on closer inspection, they do not satisfy the requirements for an appeal of an interlocutory order.

The issue before the Bankruptcy Court on the Paiea Defendants' Rule 12(b)(6) motion was simply whether the Trustee had stated a claim for fraudulent transfers. The Bankruptcy Court denied the motion to dismiss, reasoning that:

> The most important things, it seems to me, are the policy arguments . . . . [I]t is very important that the law look at the form over the substance of transactions,[4] and in doing that here clearly the complaint alleges a fraudulent conveyance. I've indicated . . . on the record previously[,] that I have been greatly disturbed by the extensive network created by the debtor in these business transactions. I believe 94 was the number of entities that had been identified that he used in essentially trying to avoid his judgment creditors for a period of, I guess, close to 15 years. And I agree entirely with the trustee. If I allowed this structured transaction to be beyond the reach of the bankruptcy law and other uniform conveyance laws [and] fraudulent conveyance laws[,] ultimately the legal system would pay a very high price and for those reasons [the] motion [to dismiss] is denied.

Tr. at 27:5-25, attached as Ex. A to Paiea Entities' Mem. of Law in Supp. of their Mot. for Leave to Appeal. The Paiea Defendants argue that the Bankruptcy Court erred in finding that the complaint states a claim because, as a matter of law, none of Beale's own assets were transferred. They argue that the Bankruptcy Court wrongly decided the two legal questions identified for appeal and implicitly held that (1) a corporation's transfer of corporate assets

---

[4]The Bankruptcy Court stated that it "agree[d] entirely with the trustee," who argued that the substance, not the form, of a transfer is controlling for the purposes of fraudulent transfer law. The Bankruptcy Court then went on to consider the substance of the transfer before making its oral ruling. Thus, although the transcript indicates that the Bankruptcy Court said "form over substance," this court believes that "substance over form" correctly reflects its intended meaning.

6

constitutes a transfer of its shareholders' assets; and (2) an officer's position as president constitutes a property right of the officer that can be transferred.

The Bankruptcy Court does appear to engage in statutory interpretation to reach its holding. So, at first blush, the Paiea Defendants' argument that there are pure issues of law involved seems plausible. However, this court agrees with the Trustee that the questions identified by the Paiea Defendants as appealable are framed too narrowly to allow a court to determine whether the Trustee had stated a claim for fraudulent transfer, which is what a court must do on a motion to dismiss. The legislative history, statutory language, and case law on fraudulent transfers support a case-by-case determination, which is necessarily fact specific. *See, e.g.*, § 101(54)(D) (defining a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property"); *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002) (observing that courts may look to "badges of fraud," such as facts about familial relationships and the timing of transfers, as circumstantial evidence of fraudulent transfers); *In re FBN Food Servs., Inc.*, 185 B.R. 265, 271-72 (N.D. Ill. 1995) (quoting *In re Besing*, 981 F.2d 1488, 1492 (5th Cir. 1993) and congressional reports of the 95th Congress to support a broad reading of the bankruptcy statute).

The Bankruptcy Court took into consideration the facts of this almost four-year old case, specifically the web of entities and transfers that took place over the course of many years, before reaching its conclusion.[5] Although the Paiea Defendants argue that the Bankruptcy Court

---

[5]Of course, the denial of a motion to dismiss simply means that the plaintiff has met the notice pleading standards required to state a claim. It does not address the merits; the Trustee still has to prove its case.

7

should have just looked at abstract technical issues of ownership, this court remains unconvinced that it could do so and make a dispositive finding at the motion to dismiss stage. Rather, as the Trustee argues and the Bankruptcy Court stated, a fuller consideration of the substance of the transfers is necessary when determining whether a claim has been stated for fraudulent transfer. The law regarding what constitutes a fraudulent transfer is porous, and the very nature of a fraudulent transfer claim is to look behind the transaction's facial (legal) validity to determine whether it is substantively appropriate. Resolution of a narrow question of law, such as that proposed by the Paiea Defendants, cannot be controlling at the motion to dismiss stage for such a fact-specific claim. Thus, this court concludes that the issues presented by the Paiea Defendants are inappropriate for interlocutory appeal. *See Ahrenholz*, 219 F.3d at 676-77 (concluding that a pure question of law is "something that the court of appeals c[an] decide quickly and cleanly without having to study the record").

### III. CONCLUSION

The Paiea Defendants have not satisfied the four-prong test required by § 1292(b). Therefore, the defendants motion for leave to appeal the interlocutory order of the bankruptcy court is hereby denied.

ENTER:

    /s/                        
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 20, 2008